# Exhibit A

 Gmail           **Jeffrey Groeber <jeffrey.groeber@gmail.com>**

## Student Advantage Fund NDA

**Darren Richman <darren.richman@klimllc.com>**        Fri, Oct 27, 2017 at 6:24 AM
To: Jeffrey Groeber <jeffrey.groeber@gmail.com>
Cc: David Chene <david.chene@klimllc.com>

Jeff, thank you for sharing your story with us. We are very excited to dig in as I hope was apparent. As DL knows, I have routinely been drawn to the specialty finance market for investment opportunities.
I applaud you for seeing this opportunity and look forward to seizing on it with you.
We will sign the NDA today.
Best,
Darren

Sent from my iPhone

On Oct 26, 2017, at 11:03 PM, Jeffrey Groeber <jeffrey.groeber@gmail.com> wrote:

> Thank you both for sitting down to chat today - appreciate your time and feedback. Attached our NDA for your review. Once mutually executed I can give you a data dump and we can dive into the details.
>
>
> Best,
>
> --
> Jeffrey M. Groeber
> jeffrey.groeber@gmail.com
> Mobile: (917)763-8485
>
> <Kennedy Lewis_SAF NDA.docx>

# Exhibit B

## CONFIDENTIALITY & NON-CIRCUMVENTION AGREEMENT

**THIS CONFIDENTIALITY & NON-CIRCUMVENTION AGREEMENT**, (the "**Agreement**") is made as October 27, 2017 by and between Student Advantage Fund I LLC, a [Delaware] limited liability company (the "**Company**"), whose office is located at 164 Bank Street, Apartment 5B, New York, NY 10014 and Kennedy Lewis Investment Management, having an address at 80 Broad Street, 22nd Fl, New York, NY 10004 ("**Investor**") (each individually a "Party" and collectively the "Parties"). Investor shall include itself and any and all its Affiliates.

**WHEREAS**, the Company is engaged in the business of, among other things, researching, identifying, and selecting opportunities for its Clients (as hereinafter defined) for investment purposes; and

**WHEREAS**, the Company is also engaged in the business of, among other things, representing individuals and entities in the negotiation, acquisition, development and management of opportunities for investment purposes on behalf of certain individuals and entities from time to time, and

**WHEREAS**, Investor understands that the Company's relationships with its Clients are proprietary for purposes of any transaction between Investor and the Clients of the Company, and

**WHEREAS**, Investor wishes to engage the Company for the purpose of researching, identifying, and selecting opportunities for investment in the business of the Clients ("the Transaction") and the Company has agreed to be so engaged; and

**WHEREAS**, the Parties are desirous of ensuring that Investor will not circumvent the Company with respect to entering into a business relationship with any Clients of the Company.

**NOW THEREFORE**, for and in consideration of the mutual promises, covenants and obligations contained herein, the Parties hereby agree as follows:

1.  **DEFINITIONS**

    (a)  <u>Clients</u>. Any profit or not-for-profit organization, institution or company which provides educational services to individuals, with respect to whom the Company has established, engaged in, or has targeted to engage in, discussions to provide any financing and/or related services, including, without limitation, through the establishment, financing and/or purchase of income sharing agreements.

    (b)  <u>Representative</u>. Any Party's officers, directors, shareholders, subsidiaries, members, successors or assigns, representatives, affiliates, managers, partners, trustees, employees, agents, independent contractors who render any services on behalf of the Party, investors, advisors, including any accountants, experts, counsel, consultants and financial advisors, any prospective institutional lender or equity investor from whom such Party may seek financing for a transaction, and any other person reasonably believed to render services of any kind or type to the Party.

(c)    Affiliate. A person or entity that (directly or indirectly) owns or controls, is owned or controlled by, or is under common ownership or control with, any Party. For purposes of this definition, the term "own" means to own an equity interest (or the equivalent thereof) of more than 10 percent.

(d)    Information. (i) any information, communication, correspondence or data including, but not limited to, business information, credit review reports, valuations, plans, technical or financial information, customer lists or proposals, schematics, sketches, financials, computer programs and documentation, drawings or specifications, trade secrets, and inventions, information concerning the Company or Clients or their subsidiaries or affiliates, information concerning the business, processes, procedures, technology, potential customers or suppliers of the Company or Clients or their subsidiaries and affiliates, and any software, documentation or data of the Company or Clients or their subsidiaries or affiliates which, prior to the date hereof has been, or after the date hereof may be, furnished by or on behalf of the Company to Investor or its Representative, in written, graphic, electromagnetic or other tangible form, (ii) all notes analyses work papers compilations comparisons studies or other similar documents prepared by or for the use of the Investor or its Representatives containing, reflecting, based upon or generated from any Information and, (iii) the fact that (A) such information has been made available to or is being inspected or evaluated by Investor or its Representatives, (B) investigations, discussions or negotiations concerning the Transaction are taking place between the Parties, and (C) any of the terms, conditions or other facts with respect to any such Transaction, including the status thereof provided that "Information" shall not include information which:

(i)    was already in the possession of Investor or its Representatives at the time of disclosure by the disclosing party;

(ii)    has become publicly available without any improper act or omission of the receiving party; or

(iii)    was disclosed to Investor or its Representatives by a third party having legitimate possession of such information; or

(iv)    was independently developed by Investor or its Representatives.

(e)    Parties.the Company and Investor; each a "Party"

2.    **NON-DISCLOSURE**

(a)    Investor agrees that the Information shall be kept confidential by the Investor and its Representatives; and

(b)    It shall not, in any manner whatsoever, disclose or disseminate the Information furnished to it by or on behalf of the Company to any other person or entity, provided, however, that any disclosure of the Information may be made to its Representatives who: (a) have been advised of the obligations of confidentiality set out in this Agreement; (b) have a need to know such Information for the purpose of the Transaction; and (c) in the

case of Investor's contractors, have signed a confidentiality agreement with Investor that would apply to the information which includes provisions substantially similar to those of this Agreement;

(c)     in accordance with a judicial, government or regulatory order, provided Investor shall give the Company reasonable prior notice of such disclosure and shall comply with any applicable protective order or equivalent that applies to the disclosure; or

(d)     subject to clauses (a) through (c) above, to any other -person or entity upon the prior written consent of the Company.

## 3.    RETURN AND DESTRUCTION OF INFORMATION

Investor shall not record, make notes of, copy or reproduce the Information of the except for the purpose of facilitating the Transaction, or with the prior written approval of the Company. Investor shall not reverse engineer, decompile, or disassemble any software which forms part of the Information. Investor shall, promptly upon the written request of the Company destroy or deliver (or cause to be destroyed or delivered) to the Company all documents and all other tangible materials furnished by or on behalf of the Company which constitute Information, without retaining any copy thereof and certify such destruction. Notwithstanding the return or destruction of any Information as described above, Investor and its Representatives will continue to be bound by their obligations under this Agreement. Investor agrees to notify the Company immediately upon discovery of an unauthorized use or disclosure of the Information.

## 4.    NON-CIRCUMVENTION

Investor and its Representatives shall not circumvent the Company with respect to any inquiries,   negotiations, offers or commercial dealings concerning any transaction, business dealings or negotiations with any Client or Clients, prospective Clients or business contacts of the Company, with any person or entity of whom Investor and its Representatives may become aware of as a result of the Company's introduction, or with any transaction, business dealing or negotiation of which Investor and its Representatives may become aware of as a result of the Company's disclosure, without the express written consent of the Company. At all times during the term of this Agreement, and for a period of two (2) years after the termination of this Agreement, Investor and its Representatives shall not, whether directly or indirectly, solicit parties identified by the Company for purposes of confirming or inquiring about information provided by the Company nor to seek additional information, nor to engage in any financial, investment or commercial activity of a similar nature to the services rendered by the Company. Investor further agrees not to take or allow to be taken any action during the term of this Agreement that has the effect of circumventing the terms of this Agreement, it being the intent of the parties that each abide by both the letter and spirit of the terms of this Agreement.

## 5.    PRIOR CONSENT OF THE COMPANY

Investor shall not during the term of this Agreement enter into or seek to enter into and consultation or agreement with, or solicit or obtain information from, any other person or entity for the purpose of researching, identifying, evaluating or selecting opportunities for investment purposes or the negotiation, acquisition, development or management of and investment opportunity with respect to the Clients in any manner without the prior written consent of the Company and Investor shall forthwith inform the Company or any approach from Client or any other person or entity with respect thereto.

## 6.    TERMINATION

Investor's obligations with respect to the non-disclosure and non-circumvention as defined in this Agreement expire on the earlier of (a) the second ()(2nd) anniversary of the termination of this Agreement or (b) the execution of a definitive agreement between the Parties containing terms to the contrary. In addition, the Parties may terminate their obligations hereunder upon a date mutually agreed in writing.

## 7.    GOVERNANCE

The Parties agree that this Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York (without giving effect to the conflict of laws principles thereof), and each of the Parties irrevocably and exclusively consents to the aforementioned jurisdiction in any such suit, action or proceeding.

## 8.    INDEMNITY

Investor hereby indemnifies and holds harmless the Company and its successors, assigns and Representatives with respect to any claims or actions, including claims or actions brought by or on behalf of any of the Clients, against the Company or any of its successors, assigns or Representatives arising out of the disclosure of the Information to Investor, the breach of any obligation under this Agreement or the negligence, acts or omissions of Investor or its Representatives arising out of the disclosure of the Information.

## 9.    BUSINESS RELATIONSHIPS

(a)    Each Party acknowledges that this Agreement is not intended to, and does not obligate any Party to enter into any further discussions, negotiations or agreements, or to otherwise proceed with the Transaction (or any other transaction or business relationship) with each other, or with any other person or entity, except as may be separately agreed in writing between the parties in relation thereto.

(b)    Each Party acknowledges and agrees that this Agreement pertains only to the confidentiality of the Information and the related matters expressly stated here in, that no contract or agreement with respect to the Transaction or any other possible transaction or business relationship shall be deemed to exist between the

Parties unless and until a definitive agreement has been executed and delivered by the Parties.

10. **MISCELLANEOUS**

(a)     Investor acknowledges that money damages would not be a sufficient remedy for any breach of this Agreement, and accordingly, in the event of any such breach or threatened breach, the Company shall be entitled to equitable relief, including an injunction or specific performance, in addition to any other remedies available to it at law or in equity. Nothing contained herein shall in any way limit the rights or activities of either Party to deal directly with any third party so long as it complies with its obligations hereunder.

(b)     Except as otherwise expressly provided elsewhere in this Agreement, the parties may amend, change, modify, waive, supplement, rescind, terminate or discharge this Agreement only by a written agreement signed by both parties that identifies itself as an amendment, change, modification, waiver, supplementation, rescission or discharge of this Agreement.

(c)     The failure or delay of any Party at any time to require performance by the other Party of any provision of this Agreement, even if known, shall not affect the right of such party to require performance of that provision or to exercise any right, power or remedy under this Agreement. Any waiver by any party of any breach of any provision of this Agreement should not be construed as a waiver of any former, continuing or succeeding breach of such provision, a waiver of the provision itself, or a waiver of any right, power or remedy under this Agreement. No notice to or demand on any Party in any case shall, of itself, entitle such Party to any other or further notice or demand in similar or other circumstances.

(d)     If any provision of this Agreement is determined to be invalid, illegal or unenforceable, that provision shall be deemed to be struck from this Agreement and the remaining provisions of this Agreement remain in full force to the extent permitted by law.

(e)     This Agreement constitutes the final agreement between the Parties. It is the complete and exclusive expression of the parties' agreement on the matters contained in this Agreement. All prior and contemporaneous negotiations and agreements between the Parties on the matters contained in this Agreement are expressly superseded by this Agreement.

(f)     The Parties. may execute this Agreement in multiple counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement. The signatures of both Parties need not appear on the same counterpart, and delivery of an executed counterpart signature page by one Party to the other by facsimile or electronic mail with PDF attachment is as effective as executing and delivering this Agreement in the presence of the other Party to this Agreement.

(g)     Each Party acknowledges it has participated in the negotiation and preparation of

this Agreement, and has reviewed this Agreement and had the opportunity to consult with its counsel with respect to its terms and conditions. Therefore, each Party agrees that the rule of construction to the effect that any ambiguities in a document shall be interpreted against the drafting party, will not be utilized in the interpretation, construction, or enforcement of this Agreement, and no consideration shall be given to the issue of which party hereto actually prepared, drafted or requested any term or condition of this Agreement.

(h)    If either Party brings an action to enforce the terms of this Agreement or to declare rights hereunder, the prevailing Party in any such action, on trial or appeal, shall be entitled to its expenses, including but not limited to reasonable attorneys' fees and court costs, to be paid by the losing Party as fixed by the court.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date and year first above written.

STUDENT ADVANTAGE FUND I LLC

By:     *Jeffrey Groeber*

Title: Authorized Officer
Name: Jeffrey Groeber

Kennedy Lewis Management LP

By:

Title: Chief Operating Officer
Name: Anthony Pasqua

# Exhibit C

**Jeffrey Groeber** <jeffrey@saf.fund>

## Deals
1 message

**Jeffrey Groeber** <jeffrey@saf.fund>      Fri, Nov 17, 2017 at 8:51 AM
To: Darren Richman <darren.richman@klimllc.com>, David Chene <david.chene@klimllc.com>, Niles Chura
<niles.chura@klimllc.com>
Bcc: Doug Logigian <logigian@gmail.com>



Best,

Student Advantage Fund Mail - Deals

--

## Jeffrey Groeber
**Student Advantage Fund**
**Founder & General Partner**
mobile: 917.763.8485
mail: jeffrey@saf.fund
http://saf.fund | LinkedIn

---

**3 attachments**

 Redacted ███████████ scenarios to consider.docx
15K

 Investor Deal Summary.xlsx
180K

 Redacted ███████████ xlsx
74K





**Jeffrey Groeber <jeffrey@saf.fund>**

## Follow Up

3 messages

---

**Darren Richman** <darren.richman@klimllc.com>          Tue, Nov 21, 2017 at 1:35 PM
To: Jeffrey Groeber <jeffrey@saf.fund>
Cc: Niles Chura <niles.chura@klimllc.com>

Jeff, thanks again for joining David and I for drinks. I must admit that we are very excited to continue to iterate with you on the potential for both Leif and SAF (SFC). Niles and I refined the ecosystem further this morning. We will eventually send you an updated schematic.

As we discussed last night, there are a number of priorities that we should continue to focus on. We will take your lead, but a few categories to consider at a high level:

Redacted

---

**Jeffrey Groeber** <jeffrey@saf.fund>          Tue, Nov 21, 2017 at 11:03 PM
To: Darren Richman <darren.richman@klimllc.com>
Cc: Niles Chura <niles.chura@klimllc.com>, David Chene <david.chene@klimllc.com>

Redacted

SAF: includes 1) Funding Schedule (starting point) and 2) latest Investor Deal Summary

J

On Tue, Nov 21, 2017 at 1:35 PM, Darren Richman <darren.richman@klimllc.com> wrote:

Jeff, thanks again for joining David and I for drinks. I must admit that we are very excited to continue to iterate with you on the potential for both Leif and SAF (SFC). Niles and I refined the ecosystem further this morning. We will eventually send you an updated schematic.

As we discussed last night, there are a number of priorities that we should continue to focus on. We will take your lead, but a few categories to consider at a high level:



--
**Jeffrey Groeber**
**Student Advantage Fund**
**Founder & General Partner**
mobile: 917.763.8485
mail: jeffrey@saf.fund
http://saf.fund | LinkedIn

---

**Jeffrey Groeber** <jeffrey@saf.fund>                                    Wed, Nov 22, 2017 at 10:37 AM
To: Darren Richman <darren.richman@klimllc.com>
Cc: Niles Chura <niles.chura@klimllc.com>, David Chene <david.chene@klimllc.com>

Redacted

Case 1:19-cv-02401-PKC Document 11-1 Filed 03/26/19 Page 16 of 33

# Redacted

Case 1:19-cv-02401-PKC     Document 11-1     Filed 03/26/19     Page 17 of 33

Redacted

J

On Tue, Nov 21, 2017 at 1:35 PM, Darren Richman <darren.richman@klimllc.com> wrote:

Jeff, thanks again for joining David and I for drinks. I must admit that we are very excited to continue to iterate with you on the potential for both Leif and SAF (SFC). Niles and I refined the ecosystem further this morning. We will eventually send you an updated schematic.

Redacted

--

**Jeffrey Groeber**
**Student Advantage Fund**
**Founder & General Partner**
mobile: 917.763.8485
mail: jeffrey@saf.fund
http://saf.fund | LinkedIn



Jeffrey Groeber <jeffrey@saf.fund>

---

## Latest schematic....

7 messages

---

**Niles Chura** <niles.chura@klimllc.com>            Mon, Nov 27, 2017 at 3:53 PM
To: Jeffrey Groeber <jeffrey@saf.fund>
Cc: Darren Richman <darren.richman@klimllc.com>, David Chene <david.chene@klimllc.com>


Happy to walk you through or we can chat about in person later this week.


Niles K. Chura

80 Broad Street, 22nd Floor

New York, NY 10004

niles.chura@KLIMLLC.com

Office:  (212) 782 3487





The information contained in this email transmission is intended only for the person to whom it is addressed and may contain confidential and/or privileged material. Any unauthorized copying, disclosure or distribution of the material in this email is strictly prohibited. If you are not the intended recipient of this information, do not review, retransmit, disclose, disseminate, use, or take any action in reliance upon this information. If you received this transmission in error, please contact the sender and destroy all printed copies and delete the material from all computers and other electronic devices.

---

📄 **Platform - KLIM.pdf**
357K

---

**Jeffrey Groeber** <jeffrey@saf.fund>            Tue, Nov 28, 2017 at 10:23 AM
To: Niles Chura <niles.chura@klimllc.com>
Cc: Darren Richman <darren.richman@klimllc.com>, David Chene <david.chene@klimllc.com>



Case 1:19-cv-02401-PKC    Document 11-1    Filed 03/26/19    Page 20 of 33

**Redacted**

J

[Quoted text hidden]

--

**Jeffrey Groeber**
**Student Advantage Fund**
**Founder & Managing Member**
mobile: 917.763.8485
mail: jeffrey@saf.fund
http://saf.fund | LinkedIn

---

**Niles Chura** <niles.chura@klimllc.com>      Thu, Nov 30, 2017 at 6:41 AM
To: Jeffrey Groeber <jeffrey@saf.fund>
Cc: Darren Richman <darren.richman@klimllc.com>, David Chene <david.chene@klimllc.com>

**Redacted**

Case 1:19-cv-02401-PKC    Document 11-1    Filed 03/26/19    Page 21 of 33

# Redacted

# Exhibit D

LIVE DEAL SUMMARY







# Exhibit E



**WILSON ELSER**
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

January 29, 2019

Stephen Barrett
212.915.5479 (direct)
Stephen.Barrett@wilsonelser.com

**VIA FedEx Overnight**
Kennedy Lewis Investment Management LP
Attn: Anthony Pasqua
Chief Operating Officer
80 Broad Street, 22 Floor
New York, New York 10004

Re:   **Student Advantage Fund I**
      **Violation of Non-Circumvention Agreement**

Dear Mr. Pasqua:

Our law firm represents Student Advantage Fund I LLC ("SAF"). Please allow this letter to serve as our demand that Kennedy Lewis Investment Management LP ("KLIM") cease and desist its exploitation of SAF's proprietary knowledge and trade secrets, its solicitation of SAF's clients, prospective clients and proprietary contacts, and its ongoing engagement in financial, investment and commercial activity of a similar nature to SAF's business.

KLIM signed a Confidentiality & Non-circumvention Agreement ("Agreement") with SAF on October 27, 2017 in connection with KLIM's potential investment in SAF's business.[1] The Agreement reads, in relevant part, as follows:

**2. NON-DISCLOSURE**

(a) [KLIM] agrees that the Information shall be kept confidential by [KLIM] and its Representatives; and

(b) It shall not, in any manner whatsoever, disclose or disseminate the Information furnished to it by or on behalf of [SAF] to any other person or entity, provided, however, that any disclosure of the Information may be made to its Representatives who: (a) have been advised of the obligations of confidentiality set out in this Agreement; (b) have a need to know such Information for the purpose of the Transaction; and (c) in the case of [KLIM]'s contractors, have signed a confidentiality agreement with [KLIM]

---

[1] A copy of the Agreement is enclosed herewith for your review.

150 East 42nd Street • New York, NY 10017 • p 212.490.3000 • f 212.490.3038

Albany • Baltimore • Boston • Chicago • Connecticut • Dallas • Denver • Garden City • Houston • Las Vegas • London • Los Angeles • Louisville • McLean
Miami • Milwaukee • New Jersey • New York • Orlando • Philadelphia • San Diego • San Francisco • Washington, DC • West Palm Beach • White Plains
Affiliates: Berlin • Cologne • Frankfurt • Munich • Paris
**wilsonelser.com**

9583116v.1

 **WILSON ELSER**
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

- 2 -

that would apply to the information which includes provisions substantially similar to those of this Agreement;

(c) in accordance with a judicial, government or regulatory order, provided [KLIM] shall give [SAF] reasonable prior notice of such disclosure and shall comply with any applicable protective order or equivalent that applies to the disclosure; or

(d) subject to clauses (a) through (c) above, to any other person or entity upon the prior written consent of the Company.

. . .

## 4. NON-CIRCUMVENTION

[KLIM] and its Representatives shall not circumvent [SAF] with respect to any inquiries, negotiations, offers or commercial dealings concerning any transaction, business dealing or negotiations with any Client or Clients, prospective Clients or business contacts of [SAF], with any person or entity of whom [KLIM] and its Representatives may become aware of as a result of [SAF]'s introduction, or with any transaction, business dealing or negotiation of which [KLIM] and its Representative may become aware of as a result of [SAF]'s disclosure, without the express written consent of [SAF]. At all times during the term of this Agreement and for a period of two (2) years after the termination of this Agreement, [KLIM] and its Representatives shall not, whether directly or indirectly, solicit parties identified by [SAF] for purposes of confirming or inquiring about information provided by [SAF] nor to seek additional information, nor to engage in any financial, investment or commercial activity of a similar nature to the services rendered by [SAF]. [KLIM] further agrees not to take or allow to be taken any action during the term of this Agreement that has the effect of circumventing the terms of this Agreement, it being the intent of the Parties that each abide by both the letter and spirit of the terms of this Agreement.

. . .

## 10. MISCELLANEOUS

(a) [KLIM] acknowledges that money damages would not be a sufficient remedy for any breach of this Agreement, and accordingly, in the event of any such breach or threatened breach, [SAF] shall be entitled to equitable relief, including an injunction or specific performance, in addition to any other remedies available to it at law or in equity.

**WILSON ELSER**
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

- 3 -

...

(h) If either party brings an action to enforce the terms of this Agreement or to declare rights hereunder, the prevailing Party in any such action, on trial or appeal, shall be entitled to its expenses, including but not limited to reasonable attorneys' fees and court costs, to be paid by the losing Party as fixed by the court.

It has come to SAF's attention that KLIM is now engaged in a business model that misappropriates, *in toto*, the proprietary information disclosed to KLIM by SAF pursuant to the Agreement. Moreover, KLIM is targeting SAF's clients and prospective clients in direct violation of the Agreement. Furthermore, KLIM has affiliated itself and engaged in financial, investment and commercial activity with one of SAF's primary servicing competitors—an entity that only became known to KLIM through discussions with SAF.[2]

The fact that KLIM is now directly competing with SAF is a complete breach and violation of the Agreement. KLIM's actions also likely violate a host of other statutory and common law obligations owed to SAF under both state and federal law, e.g. The Defend Trade Secrets Act of 2016 codified at 18 U.S.C. § 1836, *et seq.*

If KLIM continues to violate the Agreement, a lawsuit will be commenced against KLIM and any other necessary parties, seeking monetary damages to be proved at trial. We will also immediately seek an injunction pursuant to Paragraph 10(b) of the Agreement. Hopefully this recourse will not be necessary, but our client has its own interests to protect and will vigorously do so.

KLIM will not receive another warning letter from this office. If KLIM does not confirm in writing to our office by February 6, 2019 that it will cease its violation of the Agreement, a lawsuit will be commenced immediately. To avoid judicial intervention, we also ask that KLIM or its representatives reach out to our office by no later than February 6, 2019 to discuss options for remediating the harm that has already been caused to SAF.

Finally, we take this opportunity to advise you that, from the date that you receive this letter, while any discussion between SAF and KLIM is ongoing, any and all records of any sort, nature, or kind whatsoever with regard to the Agreement and/or KLIM's competing business ventures which are the subject of this letter must be scrupulously maintained and not spoiled, deleted, or disposed of in any manner whatsoever. The law exacts severe penalties for such spoliation of evidence.

We look forward to your anticipated cooperation.

---

[2] *See e.g.,* UNTAPPED POTENTIAL: FUNDING FUTURE CAREERS THROUGH INCOME SHARE AGREEMENTS (available at https://generalassemb.ly/blog/untapped-potential-funding-future-careers-income-share-agreements/) (last accessed January 28, 2019).

9583116v.1

 **WILSON ELSER**
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

- 4 -

Very truly yours,

Wilson Elser Moskowitz Edelman & Dicker LLP

Stephen Barrett

## cc (via email)

Anthony Pasqua (anthony.pasqua@klimllc.com)
Darren Richman (darren.richman@klimllc.com)
David Chene (david.chene@klimllc.com)
Niles Chura (niles.chura@klimllc.com)

9583116v.1



January 30, 2019

William Cusack
212.915.5824 (direct)
William.Cusack@wilsonelser.com

**VIA FedEx Overnight**
Kennedy Lewis Investment Management LP
Attn: Anthony Pasqua
Chief Operating Officer
80 Broad Street, 22 Floor
New York, New York 10004

Re:    **Student Advantage Fund I**
       **Violation of Non-Circumvention Agreement**

Dear Mr. Pasqua:

Our law firm represents Student Advantage Fund 1 LLC and Jeffrey Groeber (collectively "SAF"). Despite receiving SAF's letter demanding that Kennedy Lewis Investment Management LP ("KLIM") cease and desist in circumventing business dealings with SAF's prospective clients and business contacts, KLIM continues to do so in violation of the October 27, 2017 executed Confidentiality & Non-circumvention Agreement ("Agreement").

It has come to SAF's attention that, today, KLIM Managing Partner Darren Richman solicited a SAF prospective Client/business contact ("Contact") for information. KLIM became aware of the Contact via a December 4, 2017 in-person meeting at KLIM's offices that was a direct result of SAF's introduction. Today's solicitation by Mr. Richman was in breach of the Agreement, ¶4, which expressly prohibits KLIM from soliciting SAF's prospective clients/business contacts for information without SAF's express written consent.

KLIM must confirm in writing to our office by February 6, 2019 that it will cease its violation of the Agreement or a lawsuit will be commenced immediately.

Best regards,

Wilson Elser Moskowitz Edelman & Dicker LLP

William Cusack

150 East 42nd Street • New York, NY 10017 • p 212.490.3000 • f 212.490.3038

Albany • Baltimore • Boston • Chicago • Connecticut • Dallas • Denver • Garden City • Houston • Las Vegas • London • Los Angeles • Louisville • McLean
Miami • Milwaukee • New Jersey • New York • Orlando • Philadelphia • San Diego • San Francisco • Washington, DC • West Palm Beach • White Plains
Affiliates: Berlin • Cologne • Frankfurt • Munich • Paris
**wilsonelser.com**

9590345v.1

 WILSON ELSER

\- 2 -

### cc (via email)

Anthony Pasqua (anthony.pasqua@klimllc.com)
Darren Richman (darren.richman@klimllc.com)
David Chene (david.chene@klimllc.com)
Niles Chura (niles.chura@klimllc.com)

9590345v.1

**Akin Gump**

STRAUSS HAUER & FELD LLP

STEPHEN M. BALDINI
+1 212.872.1062/fax: +1 212.872.1002
sbaldini@akingump.com

February 6, 2019

VIA E-MAIL

William Cusack
Wilson Elser Moskowitz Edelman & Dicker LLP
150 East 42nd Street
New York, NY 10017

      Re:    Student Advantage Fund I LLC

Dear Mr. Cusack:

We are counsel to Kennedy Lewis Investment Management LLC ("KLIM") and write in response to your letters dated January 29th and January 30th regarding your client, Student Advantage Fund I LLC ("SAF") and an agreement dated October 27, 2017 (the "Agreement") between SAF and KLIM. Your letter makes certain allegations about KLIM and alleges, among other things, a breach by KLIM of the Agreement.

Please be advised that any allegations of wrongdoing contained in your letter, whether in contract, tort or otherwise, are completely meritless and KLIM denies any and all wrongdoing whatsoever with respect to this matter. KLIM is prepared to defend itself against these unwarranted accusations and assert its own right with respect thereto. Please be further advised that KLIM reserves all rights and remedies available to it if SAF continues to pursue these baseless allegations against KLIM and does not withdraw these allegations immediately.

As a result of the potential litigation described above, SAF is now legally required to preserve all documents, communications, and data, whether in paper or electronic form, that are reasonably likely to be relevant to the potential litigation. This includes suspending any existing policies regarding retention and destruction.

Sincerely,

Stephen M. Baldini