UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
STUDENT ADVANTAGE FUND I LLC,

                    Plaintiff,                    19-cv-2401 (PKC)

        -against-                      OPINION
                                                            AND ORDER

KENNEDY LEWIS MANAGEMENT LP.,

                    Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Defendant Kennedy Lewis Management LP ("KLM") moves to partially dismiss the First Amended Complaint (the "Complaint") filed by Student Advantage Fund I LLC ("SAF") pursuant to Rule 12(b)(6), Fed. R. Civ. P. The Complaint asserts seven causes of action, and KLM moves to dismiss only its claims for fraud and breach of the implied covenant of good faith and fair dealing.

        For the reasons that will be explained, KLM's motion is granted.

BACKGROUND.

        SAF was formed in October 2017 for the purpose of engaging in Income Share Agreement ("ISA") investments. (Compl't ¶ 8.) ISAs are a form of higher-education financing: a lender funds a student's educational expenses, and, in exchange, the student agrees to repay a fixed percentage of his or her income over a set number of years. (Compl't ¶ 9.) ISAs are intended to be an alternative to the traditional student-loan system, and SAF alleges that it has developed a proprietary model that minimizes risks to students and institutions and maximizes funding efficiency. (Compl't ¶ 10.)

SAF began discussions with KLM in October 2017, when it was seeking financing. (Compl't ¶ 23.) According to the Complaint, "it was apparent" that ISAs were "completely novel" to the leadership of KLM, which expressed interest in investing in SAF. (Compl't ¶¶ 26-27.)

On October 27, 2017, KLM and SAF executed a Confidentiality & Non-Circumvention Agreement (the "Agreement"). (Compl't ¶¶ 31-32.) The Agreement contained a "Non-Disclosure" clause and a separate "Non-Circumvention" clause, pursuant to which KLM agreed that it would not disclose information provided by SAF and would "not circumvent" SAF by transacting with SAF's clients or prospective clients. (Compl't ¶ 33.) The Complaint does not annex a copy of the Agreement, but it excerpts large portions of the non-disclosure and non-circumvention provisions. (Compl't ¶ 33.) There is no dispute that the Agreement is valid and binding and that the relevant provisions are unambiguous. As alleged by SAF, the parties entered into the Agreement so that KLM could analyze the value of any potential investment in SAF. (Compl't ¶ 34.)

SAF alleges that it thereafter revealed its trade secrets and other proprietary, confidential information to KLM so that KLM could perform due diligence and value its potential investment in SAF. (Compl't ¶¶ 34.) Information disclosed by SAF included market research, its business model and the identities of educational institutions that SAF classified as existing or prospective clients. (Compl't ¶¶ 35-42.)

In November 2017, KLM circulated a draft term sheet for its contemplated investment. (Compl't ¶ 43.) As characterized in the Complaint, KLM proposed "unreasonable" revisions to the term sheet while simultaneously seeking more detailed information from SAF. (Compl't ¶ 44.) On December 31, 2017, the parties agreed in principal to a finalized term sheet,

but on January 10, 2018, KLM terminated all further discussions and never invested in SAF. (Compl't ¶¶ 47-48.)

According to the Complaint, in January 2018, KLM approached a competitor of SAF, Vemo Education, about developing an ISA business that would compete with SAF. (Compl't ¶¶ 49-54.) The Complaint alleges that KLM and Vemo targeted existing and prospective SAF clients for the purpose of entering into ISA arrangements, and did so based on information it obtained from SAF pursuant to the Agreement. (Compl't ¶¶ 55-71.)

The Complaint asserts seven causes of action, including claims under New York law for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud. (Compl't ¶¶ 90-113.) Its breach of contract claim alleges that the Agreement was a valid contract between SAF and KLM, and that the Agreement remains in effect. (Compl't ¶¶ 91-92.) The breach of contract claim alleges that SAF fully performed under the Agreement by providing information about its business model and customer lists, but that KLM breached its obligations by failing to maintain the confidentiality of SAF's information. (Compl't ¶¶ 93-94.) The same claim alleges that KLM used SAF's confidential information to work with SAF competitors, contact SAF customers and compete with SAF in the marketplace. (Compl't ¶¶ 94-96.)

RULE 12(b)(6) STANDARD.

Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth. Id. Instead, the Court must examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at

679.  "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'"  Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (per curiam) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

Additionally, a claim of fraud must be alleged with the particularity required by Rule 9(b), Fed. R. Civ. P.  Rule 9(b) "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783 F.3d 395, 403 (2d Cir. 2015) (quotation marks omitted).  When an allegation is made upon information and belief, "the allegations must be accompanied by a statement of the facts upon which the belief is founded."  Luce v. Edelstein, 802 F.2d 49, 54 n.1 (2d Cir. 1986).

DISCUSSION.

    I.    The Fraud Claim Is Dismissed.

        A.  The Fraud Claim Is Duplicative of the Breach of Contract Claim.

KLM urges that the fraud claim should be dismissed because its factual allegations and theory of damages are duplicative of the Complaint's breach of contract claim.  Because the Complaint does not identify a duty that is separate from what the Agreement requires and does not allege compensatory damages that are distinct from the breach of contract claim, KLM's motion is granted.

Under New York law, "[t]he elements of a fraud cause of action consist of 'a misrepresentation or a material omission of fact which was false and known to be false by [the] defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of

the other party on the misrepresentation or material omission, and injury.'" Pasternack v. Lab. Corp. of Am. Holdings, 27 N.Y.3d 817, 827 (2016) (quoting Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 178 (2011)).

"[A] fraud claim is not stated by allegations that simply duplicate, in the facts alleged and damages sought, a claim for breach of contract, enhanced only by conclusory allegations that the pleader's adversary made a promise while harboring the concealed intent not to perform it." Cronos Grp. Ltd. v. XComIP, LLC, 156 A.D.3d 54, 62 (1st Dep't 2017) (collecting cases). "[I]f the promise concerned the performance of the contract itself, the fraud claim is subject to dismissal as duplicative." Id. at 63 (quotation marks omitted). "A fraud-based cause of action may lie, however, where the plaintiff pleads a breach of a duty separate from a breach of the contract." Manas v. VMS Assocs., LLC, 53 A.D.3d 451, 453 (1st Dep't 2008); see also HSH Nordbank AG v. UBS AG, 95 A.D.3d 185, 206 (1st Dep't 2012) ("A claim for fraudulent inducement of contract can be predicated upon an insincere promise of future performance only where the alleged false promise is collateral to the contract the parties executed; if the promise concerned the performance of the contract itself, the fraud claim is subject to dismissal as duplicative of the claim for breach of contract.") (emphasis in original).

In cases where a plaintiff alleges both a breach of contract and fraud, "a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., 98 F.3d 13, 20 (2d Cir. 1996) (internal citations omitted).

Here, the fraud claim and the breach of contract claim are premised on the same conduct and seek the same compensatory damages. The fraud claim asserts that KLM principals and employees requested information for the purpose of "steal[ing] SAF's business." (Compl't ¶ 109.) It alleges that between October 2017 and January 2018, certain principals of KLM requested written summaries of SAF's business model and strategies. (Compl't ¶ 107.) It alleges that on December 27, 2017, a KLM employee named Griffin Dan requested a list of due diligence items from SAF, and that SAF produced "voluminous detailed materials" about its business models and strategies. (Compl't ¶ 109.) SAF alleges, upon information and belief, that as of December 27, 2017, KLM had already decided not to invest in SAF. (Compl't ¶ 109.) It alleges that KLM damaged SAF by falsely representing that it needed information to conduct due diligence. (Compl't ¶¶ 109-13.)

These allegations overlap with the breach of contract claim. The breach of contract claim alleges that SAF "exchanged knowledge regarding the Proprietary Structure, its proprietary business model, and its customer lists, including the Curated List, in exchange for KLM's promise that it would keep all such information as confidential and not circumvent SAF in the ISA marketplace." (Compl't ¶ 93.) It alleges that KLM breached the agreement by using SAF's confidential information to compete with it, and wrongfully contacted and entered deals with SAF customers, thereby resulting in damage to SAF. (Compl't ¶¶ 94-96.)

Both the fraud claim and the breach of contract claim allege that KLM obtained information about SAF under the pretense of conducting due diligence, but thereafter used that confidential information to compete with SAF. Both claims allege that KLM never intended to uphold its end of the Agreement by maintaining the confidentiality of SAF's information. The fraud claim does not identify a duty separate from KLM's promise in the Agreement to maintain

confidentiality, identify a fraudulent misrepresentation that was extraneous to the Agreement, or describe damages distinct from those caused by a breach of the Agreement. See Cronos Grp., 156 A.D.3d at 62.

Because SAF's fraud claim is duplicative of its breach of contract claim, the fraud claim is dismissed.

### B. The Complaint Does Not Allege Fraud with the Particularity Required by Rule 9(b).

The fraud claim is separately dismissed because it is not alleged with the particularity required of Rule 9(b). The fraud claim does not point to statements that were alleged to be fraudulent or plausibly allege fraudulent intent on the part of any speaker.

As noted, to satisfy Rule 9(b), a plaintiff must identify the statements or omissions claimed to be fraudulent and explain why those statements are fraudulent. Fin. Guar. Ins. Co., 783 F.3d at 403. Rule 9(b) permits a plaintiff to allege scienter generally, but the Second Circuit has "'repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent.'" United States ex rel. Tessler v. City of New York, 712 Fed. App'x 27, 29 (2d Cir. 2017) (summary order) (quoting O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991)). Rule 9(b) is "rigorously enforce[d]" in order to "'provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit.'" United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 25 (2d Cir. 2016) (quoting Obrien, 936 F.2d 676).

The fraud claim asserts that KLM principals Anthony Pasqua, Darren Richman, Niles Chura and David Chene made "misrepresentations" from October 2017 through January 2018. (Compl't ¶¶ 107-08.) These individuals allegedly stated that KLM "needed written

summaries of SAF's business model and strategies," when, in reality, they were seeking such information to "co-opt SAF's business" and not to conduct "a bona fide exercise in due diligence . . . ." (Compl't ¶ 107.) The Complaint does not allege any specific misrepresentation made by these four individuals or include any allegations raising a strong inference of fraudulent intent.

Similarly, the allegation concerning the December 27, 2017 information request from Griffin Dan does not identify any misrepresentation alleged to be fraudulent. (Compl't ¶ 109.) As described in the Complaint, Dan "sent SAF a list" of requested information. (Compl't ¶ 109.) The Complaint alleges, upon information and belief, that KLM had already decided not to invest in SAF, and that the request was made for the purpose of "steal[ing] SAF's business." (Compl't ¶ 109.) The Complaint does not identity any misrepresentation made by Dan or allege facts that raise a strong inference of fraudulent intent.

The broad and generalized allegations of fraud do not satisfy the particularity requirements of Rule 9(b). They do not identify any statements alleged to be fraudulent or include facts that give rise to a strong inference of fraudulent intent by any speaker.

Because SAF's fraud claim is not alleged with particularity, it will be dismissed.

II.  SAF's Claim for Breach of the Covenant of Good Faith and Fair Dealing Is Dismissed.

The Complaint asserts that KLM breached the implied covenant of good faith and fair dealing when it "solicited SAF's proprietary information with the intention of misappropriating that information to compete with SAF in the ISA marketplace." (Compl't ¶ 103.) It alleges that SAF fully performed under the Agreement but that KLM deprived it of its right to receive the Agreement's benefits by directly competing with SAF in the marketplace. (Compl't ¶¶ 101-02.)

Because this claim is based on the same alleged conduct of the breach of contract claim and does not allege additional damages, it will be dismissed.

"[I]n every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing." Kirke La Shelle Co. v. Paul Armstrong Co., 263 N.Y. 79, 87 (1933). When a complaint's allegations going to a defendant's breach of an implied duty are "premised on the same conduct as the breach of contract claim and [are] intrinsically tied to the damages allegedly resulting from a breach of the contract," the implied duty claim should be dismissed. Art Capital Grp., LLC v. Carlyle Inv. Mgmt. LLC, 151 A.D.3d 604, 605 (1st Dep't 2017) (quotation marks omitted); accord Netologic, Inc. v. Goldman Sachs Grp., Inc., 110 A.D.3d 433, 433-34 (1st Dep't 2013).

The breach of contract claim and the implied-covenant claim are duplicative. The contract claim alleges that KLM failed to maintain confidentiality of SAF's information and instead "has used SAF's confidential information to engage with SAF's competitors to compete with SAF in the ISA marketplace." (Compl't ¶ 94.) The implied-covenant claim alleges that KLM "solicited SAF's proprietary information with the intention of misappropriating that information to compete with SAF in the ISA marketplace." (Compl't ¶ 103.) The contract claim alleges damage based on SAF's use of "confidential" and "proprietary" information; the implied-covenant claim alleges damage based on KLM's use of "proprietary" information. (Compl't ¶¶ 96, 104.) The Complaint uses the terms "confidential" and "proprietary" interchangeably. (See, e.g., Compl't ¶¶ 29 (alleging that SAF "would share its proprietary data and details" only upon execution of the Agreement), 38, 50, 83.)

Because the claim asserting breach of the covenant of good faith and fair dealing is premised on the same conduct and damages as the breach of contract claim, it is dismissed.

CONCLUSION.

KLM's partial motion to dismiss is GRANTED. Counts Three and Four of the Complaint are dismissed. The Clerk is directed to terminate the motion. (Docket # 57.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
November 18, 2019